Kramer *v.* Philadelphia, Appellant.

Argued April 18, 1955. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE, and ERVIN, JJ.

Levy Anderson, Deputy City Solicitor, with him James D. McCrudden, Assistant City Solicitor, Jerome J. Shestack, First Deputy City Solicitor, and Abraham L. Freedman, City Solicitor, for appellant. .

Alexander F. Barbieri, for appellee.

OPINION BY ERVIN, J., July 21, 1955:

Claimant, widow of Valentine Kramer, filed a petition for workmen's compensation on behalf of herself and minor child for the death of her husband. The petition set forth that deceased died on April 28, 1952 as the result of injuries sustained on November 15, 1951 while operating a motorcycle in the course of his employment. The defendant employer, the City of Philadelphia, filed an answer stating: "The City of Philadelphia stands ready and willing to pay compensation upon the presentation of proper proofs required under the provisions of the Workmen's Compensation Act." The Workmen's Compensation Board affirmed the award of the referee, and the court below, on appeal by the defendant, sustained the award and entered judgment thereon. This appeal was taken by the City of Philadelphia.

The facts, which are not in dispute, disclose that Valentine Kramer was employed by the City of Philadelphia as a motorcycle patrolman in the Highway Patrol of the Philadelphia Police Department. He had requested and was granted permission by his superior officer to use the motorcycle assigned to him as a means of transportation to and from his home and the police station to which he had to report. On November 15, 1951, Kramer had finished his tour of duty at 7:00 o'clock p.m. and had driven home on the motorcycle. He arrived home about 7:30 o'clock p.m. After arriving home, Kramer washed the motorcycle and then

ate his dinner. After dinner he proceeded to drive the machine to the private garage just down the street from where he resided where he was accustomed to garaging the motorcycle. While en route to the garage Kramer either fell or was thrown from the motorcycle. When he returned to his home shortly thereafter he was cut and bruised. He was taken to Temple University Hospital for treatment and the next day was examined by his family doctor who described his findings as follows: "There was severe contusion of the entire left chest wall; brush burns and contusion of the entire left face; traumatic injury to the left elbow. . . ." As a result of the accident Kramer remained away from duty for a period of two weeks and when he returned to duty he was assigned not as a motorcycle patrolman but as a patrolman in the "white and black car" unit of the Highway Patrol. Kramer had been in good health prior to the accident on November 15, 1951, but after the accident he suffered a general decline in his health and a decided change in his personality. His hair turned white, he lost weight, he complained frequently of various aches and pains and his consumption of food lessened considerably. Though he was generally regarded by his family and friends as a genial and jovial man who enjoyed life his personality underwent a complete change after the accident and he became morose and depressed. On April 28, 1952, Valentine Kramer died while he was dressing in preparation for a trip to Washington, D.C. to testify in response to a subpoena by the F.B.I. As a result of the inquest the coroner directed that a death certificate be issued, reading as follows: "Cause of Death: ACUTE CARDIAC DILATATION: CORONARY INSUFFICIENCY, and OLD CARDIAC CONTUSION OF THE HEART,".

It is conceded that the decedent died from injuries received when he fell or was thrown from his motor-

cycle while driving it to the garage. Consequently the sole question for our determination is whether the injuries occurred in the course of decedent's employment.

Section 301(c) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended, 77 PS §411, provides in pertinent part that the term "injury by an accident in the course of his employment" shall include injuries "sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere. . . ."

Whether the deceased was in the course of his employment is a question of law. *Weiss v. Friedman's Hotel,* 176 Pa. Superior Ct. 98, 106 A. 2d 867. But on this appeal, where the compensation authorities have found in favor of claimant, the evidence must be viewed in the light most favorable to the claimant and she must be given the benefit of every inference reasonably deducible therefrom. *Hadfield v. American Society of Composers, Authors & Publishers,* 174 Pa. Superior Ct. 394, 101 A. 2d 423.

The evidence clearly discloses that the deceased, at the time of the accident, was operating the motorcycle assigned to him and was proceeding from his home to the garage nearby where he customarily stored the vehicle overnight. It is true that Kramer's official tour of duty had been completed and he had returned home therefrom prior to taking the motorcycle to the garage. However, an employe may be doing something other than the exact work assigned to him, and he may not be strictly at his assigned work, either as to time or place, yet the continuity of the employment is not broken unless such activity is wholly foreign to his employment or constitutes an abandonment thereof. *Conley v. Pittsburgh Coal Co.,* 157 Pa. Superior Ct. 567, 43 A. 2d 605. As stated in *Combs v. Cole Brothers Cir-*

*cus, Inc.,* 165 Pa. Superior Ct. 346, 348, 67 A. 2d 791: "An employe need not necessarily be engaged in the actual performance of work at the moment of injury to be entitled to compensation. It is enough if he is occupying himself consistently with his contract of employment in some manner reasonably incidental to his employment." In the instant case the garaging of the motorcycle was not only clearly incidental to Kramer's employment as a motorcycle patrolman but was also a duty. Captain John J. Mellon of the Highway Patrol District, Kramer's superior, testified: "Q. It was his duty, was it not, Captain Mellon, to care for that piece of equipment, it was in his custody? A. That is a rule that he must care for it. Q. When he washed and cleaned it and put it away for the night that was his obligation to do that? A. Yes, sir." Under these circumstances the injuries Kramer incurred while thus engaged in attempting to preserve and protect his employer's property in the performance of his duty were clearly sustained in the course of his employment. Furthermore, from their official records the Police Department clearly considered the decedent to have been injured in the line of duty. Captain Mellon testified that a report prepared by the House Sergeant showed the decedent was injured on duty. And the record of the coroner's inquest contains the following finding: "The decedent on 15 November 1951 skidded into a wall and was thrown from his motorcycle while at work and employed as a Police Officer in the City of Philadelphia. Accidental, in line of duty."

The contention of the appellant that the use of the motorcycle by the deceased was for his own convenience and not in the course of his employment is refuted by the testimony of Captain Mellon who testified as follows concerning the decedent's use of the motorcycle: "Patrolman Kramer was a good officer and he at-

tended a lot of court cases and he requested 'the wheel' to be used as transportation to and from work to his home and to attend court cases and hearings, and we gave him permission to use it because we didn't need the 'wheel' after his particular tour of duty."

It thus clearly appears that the use of the motorcycle was not primarily for decedent's own convenience but was also for the benefit of the employer.

We agree with the following statement contained in the opinion of Judge MILNER of the court below: "From all the testimony given, the conclusion is inescapable that Valentine Kramer sustained injuries while performing a duty required of him by reason of his employment, to wit, garaging the motorcycle assigned to him."

Judgment affirmed.