## Susman *v.* Kaufmann's Department Store, Appellant.

Argued November 19, 1956. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, and CARR, JJ. (RHODES, P. J., and ERVIN, J., absent).

*Gilbert J. Helwig,* with him *Reed, Smith, Shaw & McClay,* for appellant.

*Christ. C. Walthour, Jr.,* with him *Kunkle & Trescher,* for appellee.

OPINION BY WRIGHT, J., December 28, 1956:

In this workmen's compensation case Edmund Susman, the claimant, was severely injured when a station wagon in which he was a passenger was involved in a collision. He filed a claim for compensation from his employer, Kaufmann's Department Store. An award was made by the referee and affirmed by the Workmen's Compensation Board. Upon appeal to the Court of Common Pleas of Westmoreland County the order of the Board was affirmed, and judgment was entered in favor of the claimant. The employer has appealed.

The claimant resided in Jeannette, Pennsylvania. In March 1954, during the period when the regular drivers for Kaufmann's were on strike, Samuel Steffey, a neighbor of claimant, and temporarily on furlough from his regular work with the Pennsylvania Railroad, secured a job with Kaufmann's as the driver of a station wagon which was used to deliver and pick up parcels. Appellant's employment supervisor testified that "this was a special set-up which we called a 'special messenger detail' ". After Steffey had been working for several months, he was requested to find someone in the vicinity of Jeannette "to help me out with my deliveries at night . . . someone close to home to work with me, because I had a large area out that way to cover. And almost every night I had pick-ups, or pack-

ages, to take out, and they didn't like to see me doing it by myself". Steffy "contacted quite a few fellows, but no one wanted to work". He finally got in touch with Susman, informing him, inter alia, "that he would have transportation to and from work as long as I had the station wagon with permission". Claimant was thereafter[1] hired by Kaufmann's as a helper on the station wagon. He testified that he asked Miss Mason, who was in charge of the drivers, "if it was all right to ride back and forth in it, and she granted permission as long as Sam had the wagon". Claimant did ride back and forth with Steffey from the time of his employment until the date of the accident on all but two working days. On one of these days claimant had to leave work early because of a funeral. On the other day the station wagon was in the garage for repairs. On October 30, 1954, at 6:30 p.m., claimant was on his way home with Steffey when the collision occurred.

The referee's fifth finding of fact was "that the claimant sustained accidental injuries during the course of his employment with the defendant while riding in the company's station wagon which was engaged in the furtherance of the defendant's business". In its opinion the Board stated: "It is important to take cognizance of the fact that the accident occurred during the long drawn out department stores' drivers' strike. Delivery of merchandise was accompanied by the threat and danger of violence. It is reasonable to believe that the employment of station wagon personnel was accompanied by some indulgences on the part of the employer. We believe that the arrangements in the instant

---

[1] The employment supervisor testified that the date of employment was September 21, 1954. Based upon claimant's testimony, however, the Board stated "that the claimant was employed by the defendant during the late part of July, 1954".

case for the employment of the claimant contemplated his use of the station wagon as a medium of transportation to and from work, because he lived in such close proximity to the driver". And again in conclusion: "We cannot lose sight of the fact that the defendant was having a serious labor dispute at the time that the claimant accepted employment. Living in Jeannette, it is reasonable to believe that transportation to work from claimant's home in Jeannette was a factor in the employment and since he was injured in the vehicle provided by the defendant for such transportation, the claimant is entitled to compensation".

The only issue raised by appellant is "that the claimant was not engaged in the course of his employment at the time of the accident nor in the furtherance of his employer's business or affairs". It is argued (a) that claimant was not being furnished with transportation; and (b) even if he was, the transportation was not furnished as an incident of the employment contract and for the benefit of the employer but as a mere convenience to the employe. Appellant emphasizes Steffey's admission that he had no pick-up or delivery on the evening of the accident or on the morning of the following day, and that, shortly before the accident, he had been specifically instructed in such event to put the station wagon in the parking lot and not use it for transportation.

On the other hand Susman testified that he was not usually informed whether there were pick-ups or deliveries until they were in process, and that he knew nothing of Steffey's specific instructions. On the evening of the accident, so far as Susman was concerned, "Mr. Steffey had the wagon". It is the position of counsel for appellee that the entire factual situation supports the conclusion that Susman was being "sup-

plied transportation as an incident of his employment and for the benefit of his employer". He contends that the arrangement regarding transportation was contemplated by the employer, was in the employer's interest, and was implied in the contract of employment. It should perhaps be noted that Steffey, who was also injured in the accident, returned to his job after being released from the hospital, and was not subjected to any disciplinary action.

In cases of this nature, our review on appeal is limited to matters of law, and where the findings of the Board are based on competent evidence they are conclusive: *Greap v. Oberdorff*, 178 Pa. Superior Ct. 153, 113 A. 2d 339; *Messikomer v. Baldwin Locomotive Works*, 178 Pa. Superior Ct. 537, 115 A. 2d 853. The claimant, having the award in his favor, is entitled to the benefit of all inferences from the evidence which are favorable to him: *Neary v. Carbondale General Hospital*, 181 Pa. Superior Ct. 189, 124 A. 2d 470; *Nelson v. Borough of Greenville*, 181 Pa. Superior Ct. 488, 124 A. 2d 675; *McClemens v. Penn Auto Parts*, 181 Pa. Superior Ct. 542, 124 A. 2d 623. It is within the province of the compensation authorities to evaluate the testimony: *Muenz v. Kelso Beach Improvement Association*, 181 Pa. Superior Ct. 105, 124 A. 2d 153. Where the inferences drawn by them from the evidence are reasonable and logical, it is immaterial on appeal that other inferences might have been drawn: *Leber v. Naftulin*, 179 Pa. Superior Ct. 22, 115 A. 2d 768.

There is no general formula to determine readily whether an accident off the premises occurred in the course of employment. Many cases involving this question must be disposed of on their own peculiar facts and the question is frequently a reasonably close one: *Coleman v. Fischer*, 164 Pa. Superior Ct. 261, 63 A.

2d 687. While it is the general rule that an employer is not liable for compensation to an employe for injuries occurring off the premises while the employe is going to or returning from work, *Palko v. Taylor-McCoy Coal & Coke Co.*, 289 Pa. 401, 137 A. 625, this rule is subject to exceptions. See *Keim v. Burkholder and Johnson*, 182 Pa. Superior Ct. 460, 127 A. 2d 752. Where the contract of employment provides that the employer shall provide the means of going to or from work, the employe is actually engaged in the furtherance of the employer's business during such transportation: *Hadfield v. American Society of Composers, Authors & Publishers*, 174 Pa. Superior Ct. 394, 101 A. 2d 423. In keeping with a liberal construction of the compensation act, it has consistently been held that where transportation, or the means of transportation, is furnished the employe by the employer as a part of the agreement of employment, expressly or impliedly, and for the interest of the employer, as well as the employe, the employer is liable for injury sustained by the employe while being transported, or while using the means of transportation.[2] Under such circumstances the transportation is considered as a privilege incident to the contract of employment: *Knorr v. Central R. R. of New Jersey*, 268 Pa. 172, 110 A. 797.

An examination of the testimony sustains the conclusion of the Board that, due to the existing labor dispute, transportation to and from work was an impor-

---

[2] *Logan v. Pot Ridge Coal Co.*, 79 Pa. Superior Ct. 421; *Bock v. Reading*, 120 Pa. Superior Ct. 468, 182 A. 732; *Beck v. Ashton*, 124 Pa. Superior Ct. 307, 188 A. 368; *Hohman v. Soffel Co.*, 157 Pa. Superior Ct. 274, 43 A. 2d 361, affirmed, 354 Pa. 31, 46 A. 2d 475; *Campagna v. Ziskind*, 287 Pa. 403, 135 A. 124; *Butrin v. Manion Steel Barrel Co.*, 361 Pa. 166, 63 A. 2d 345; *Kramer v. Philadelphia*, 179 Pa. Superior Ct. 129, 116 A. 2d 280.

tant factor in claimant's employment, and was a privilege incident thereto. In this respect the instant case is somewhat analogous to *Dunn v. Trego*, 279 Pa. 518, 124 A. 174. In that case the employer, owing to a labor shortage, engaged a workman living at a considerable distance from its plant and, as a part of the contract of employment, agreed to transport the workman to and from his home without charge. It was held that the employer was liable for compensation for an injury received while the workman was on his way home on the ground that the injury was incurred in the course of employment. The Supreme Court emphasized that, due to the labor shortage, the transportation was for the employers advantage and was furnished as an inducement for the employe. Similarly in the case at bar, because of the labor dispute, Kaufmann's was experiencing difficulty in making deliveries. There were many instances of violence and it was necessary for the employer to make concessions to persons willing to undertake the hazards involved. It is for this reason that claimant was expressly authorized to use the station wagon for transportation when operated by Steffey, whose assurance with regard to transportation originally induced claimant to take the job.

Our conclusion is that the decision of the court below should be affirmed. It must be borne in mind that we are here dealing with "a special set-up" while regular employes were on strike. In the words of Judge BAUER for the court en banc, "it seems apparent to this Court that with the strike going on in Kaufmann's store where it was necessary to deliver packages and merchandise to avoid interference by the union strikers that it was certainly to the advantage of Kaufmann's to provide the transportation used in this particular.

case.  It takes little understanding to realize that when a strike is on that violence may occur if the striker's rights are being interfered with.  The Referee and the Board certainly had a right to consider every inference along these lines".

Judgment affirmed.