## Lawrence v. Heritage Nissan Inc.

*Richard S. Senker,* for plaintiff.
*Christopher E. Frantz,* for defendant.

BROWN, *J.,* January 28, 1992—On September 15, 1986, the plaintiff, Robert D. Lawrence Jr., bought a new 1986 Nissan "King Cab" pick-up truck from the defendant, Heritage Nissan Inc. He signed two contracts, a "Pennsylvania Motor Vehicle Installment Sales Contract" and an "Agreement to Provide Insurance."

Both contracts state that the truck was insured by Nationwide Insurance Company policy number "6 489 3215 836" but according to the plaintiff, this insurance information was added after he executed both documents

and without his knowledge or consent. He testified in deposition that he only agreed to sign the blank "Agreement to Provide Insurance" form after the salesman at Heritage Nissan explained it was an agreement to buy motor vehicle insurance in the future.

Nevertheless Lawrence knew the Commonwealth of Pennsylvania requires proof of insurance coverage before it will register a motor vehicle. He states he planned to buy insurance within one to two weeks after the purchase.

Sometime after 4 a.m. on September 20, 1986, five days after he took possession of the truck, Lawrence was involved in a one car accident which completely destroyed the vehicle, a light pole and a traffic signal. The truck was not insured.

Tredyffrin Township Police cited him for (1) driving under the influence of alcohol, (2) failing to drive on the right side of the roadway, (3) failing to drive at a safe speed, (4) driving while operating privileges were suspended, and (5) driving under a foreign license during suspension or revocation. A blood sample drawn one hour after the accident revealed a blood alcohol concentration of 0.20 percent. He later pled guilty in Chester County to driving under the influence.

On October 21, 1987, he filed a two count complaint against Heritage Nissan Inc. and the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles seeking money damages.[1] Count one alleges that the defendant breached its statutory and common law duty to ascertain that the person to

---

1. Plaintiff withdrew his case against the Commonwealth of Pennsylvania on October 24, 1989.

whom a new vehicle is sold and registered is insured pursuant to Pennsylvania's Motor Vehicle Financial Responsibility Act, 67 Pa. Code §43.5.

Count two alleges that defendant's conduct was an unfair and deceptive act under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201, et seq.

On July 12, 1991, we granted Heritage Nissan Inc.'s motion for summary judgment and dismissed the complaint; hence this appeal.

Pennsylvania Rule of Civil Procedure §1035 provides that summary judgment may be entered if the pleadings, depositions, answers to interrogatories, admissions and affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Helinek v. Helinek,* 337 Pa. Super. 497, 499, 487 A.2d 369, 371 (1985).

In order to determine whether summary judgment is properly entered any facts contested in the record must be viewed in the light most favorable to the non-moving party. *Spain v. Vicente,* 315 Pa. Super. 135, 139, 461 A.2d 833, 835 (1983).[2]

In his §1925(b) statement of matters complained of on appeal plaintiff alleges that this court erroneously granted defendant's motion for summary judgment be-

---

2. The entire record consists of plaintiff's complaint, defendant Heritage Nissan Inc.'s answer with new matter, plaintiff's answer to Heritage Nissan's Inc.'s new matter, Heritage Nissan Inc.'s reply to plaintiff's request for production of documents, plaintiff's answers to the first set of interrogatories and request for production of documents by defendant Heritage Nissan Inc. and a deposition of plaintiff Robert D. Lawrence Jr. taken on March 9, 1989.

cause his complaint was based upon the defendant's failure to comply with the Motor Vehicle Financial Responsibility Act, 67 Pa. Code §43.5(d). *Lieberman v. Abat's Auto Tag Service,* 344 Pa. Super. 350, 496 A.2d 831 (1985) and *Lyngarkos v. PennDOT,* 67 Pa. Commw. 121, 426 A.2d 1195 (1981). He makes no mention of the Unfair Trade Practices claim.

The Pennsylvania Code, chapter 67, §43.5(d) implementing the Motor Vehicle Responsibility Act, *Issuance of temporary registration cards,* states:

"(d) *Duty to examine documents*—The duty to examine documents shall include the following:

"(1) Before issuing a temporary registration card, the issuing agent shall examine all documents necessary to the transaction.

"(2) A temporary registration card may not be issued unless the following items are found to be in order:

"(i) Insurance information.

"(A) Except as provided in clause (B) or (C), check to determine that the vehicle is insured by examining one of the following documents covering the subject vehicle....

"(I) An identification card as required in Pa. Code Chapter 67 Subchapter B (relating to evidence of financial responsibility).

"(II) The declaration page of an insurance policy.

"(III) A valid binder of insurance.

"(IV) A copy of an application to the Pennsylvania Automobile Insurance Plan."

Plaintiff's counsel argues that if the salesman at Heritage Nissan had fully complied with 67 Pa. Code §43.5,

he would have determined that the plaintiff lacked insurance, he would not have been able to buy the pick-up truck and the accident would not have occurred. According to him, Heritage Nissan's failure to ascertain that Lawrence was not insured makes it negligent per se.

In support of this position plaintiff cites *Lyngarkos v. PennDOT,* 57 Pa. Commw. 121, 426 A.2d 1195 (1981), in which the Commonwealth Court held that a passenger, *Lyngarkos,* injured in an out-of-state accident, had a cause of action against the automobile dealer who issued the car's owner a temporary registration card without first securing proof of no-fault insurance. Because neither the passenger nor the vehicle in which he was injured was insured, and because section 301(a)(1) of the No-fault Act, 40 P.S. §1009.301(a)(1) (repealed), did not apply to injuries in accidents occurring outside Pennsylvania, *Lyngarkos* was unable to collect no-fault insurance benefits.

The *Lyngarkos* court held that the dealer's failure to ascertain that the car's owner had the required no-fault insurance allowed the car to be operated on public roads and prevented Lyngarkos from recovering compensation under the No-fault Act. *Id.,* 57 Pa. Commw. at 128, 426 A.2d at 1200. The court, however, specified that this "suit is not based on the events of the accident in which Lyngarkos was injured but on the fact that MacKay failed in its statutory duty to create an insurer who would pay the basic loss benefits provided by the No-fault Act. Section 102 of the No-Fault Act says that its purpose is to provide a better system of compensating automobile accident victims and their survivors by furnishing basic benefits and eliminating the need to prove fault in an accident. This suit is not

concerned with fault in an accident and it is brought by a person who complains that others have failed in their statutory duty to provide him with benefits." *Id.,* 57 Pa. Commw. at 128, 424 A.2d at 1199.

In this case Lawrence alleges losses of $10,331 for his truck and $7,244.45 in medical bills which would have been paid by the first party benefits of the insurance policy.

Lyngarkos was an innocent passenger who through no fault of his own sustained injuries in an uninsured car. In this case Lawrence, fully aware that he had not insured his truck, got drunk and drove his vehicle into a light pole. Under such circumstances the legal cause of Lawrence's inability to recover under the No-Fault Act was his own egregious misconduct. To reward him for it would be a travesty. Even should we find a causal nexus between the defendant's failure and the loss of no-fault benefits, the contributory negligence of Lawrence both in taking possession of the truck and later driving it drunk so far outweighs the defendant's conduct that there should be no recovery of medical benefits as a matter of law.

The plaintiff's recovery in *Lyngarkos* was based on his being deprived of protection under the No-Fault Act by reason of the dealer's dereliction. So that even if *Lyngarkos* controlled here, the claim would be at most that for the medical bills of $7,244.45. The collision loss of the truck is outside no-fault and accordingly not within the ambit of *Lyngarkos*. In *Lieberman, supra,* the other case relied on by plaintiff, there was no liability simply because *Lieberman* could not or did not establish that he had no way of recovering under the No-Fault Act; whereas *Lyngarkos* did.

Moreover in 1984, subsequent to the 1981 *Lyngarkos* decision, the Pennsylvania legislature added a new chapter to the Vehicle Code, the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. §1701, et seq. Pennsylvania Consolidated Statute, chapter 75, §1786, *Required financial responsibility*, states:

"(a) *General rule*—Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.

"(b) *Self-certification*—The Department of Transportation shall require that each motor vehicle registrant certify that the registrant is financially responsible at the time of registration or renewal thereof. The department shall refuse to register or renew the registration of a vehicle for failure to comply with this requirement or falsification of self-certification....

"(f) *Operation of a motor vehicle without required financial responsibility*—Any owner of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation shall not operate the motor vehicle or permit it to be operated upon a highway of this Commonwealth without the financial responsibility required by this chapter. In addition to the penalties provided by subsection (d), any person who fails to comply with this subsection commits a summary offense and shall, upon conviction, be sentenced to pay a fine of $300."

Pennsylvania Consolidated Statute, title 75, §1786(b) clearly places the burden of certifying that an automobile registrant has insurance *on the registrant himself,* not on the dealer who issued the temporary registration.

A car dealership may be required "to protect us from ourselves" by checking each temporary registrant's insurance documents but it should not be held liable if that registrant chooses to falsify documents certifying that he is insured. Lawrence's misconduct was not only egregious but a crime as well. 75 Pa.C.S. §1786(f).

Defendant's alleged negligence was not the legal or the factual cause of the accident and thus, defendant's motion for summary judgment was granted properly.